Good morning, Your Honors. My name is Matthew Blitt and I represent the appellant, Plaintiff Mr. Mark Gizewski. As you might know, Mr. Gizewski suffers from a significant disability as a result of thalidomide. This situation, this case, is the proverbial comma case. I remember 20 years when I first started law school, a comma can change a case, and this is that case. In this situation, the New York, the code specifically requires, requires the facility and court to follow guidelines. It did not require Mr. Gizewski to file or request whether a, whether he filed, whether court received his complaint. The grievance should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC. Exactly, Your Honor. Okay? And if you look at what the requirements are by the facility, it says shall, must, different than should. You should not operate a vehicle while using a cell phone because you can get into an accident. You may not operate a motor vehicle while using a cell phone because it's against the law. May, should, different terms. That's exactly my point here. Now if you look at the CORC requirements. Why isn't the rule that we should, to use that word, ask litigants, ask inmates to err on the side of exhaustion, that is to err on the side of contacting the IGP supervisor and figure out what happened to their appeal? Okay. Well, let's, I appreciate that question because that's a very good point and that's exactly where I'm going to go with this. Okay? Because what we have here is Mr. Jazefsky filed grievances saying that he, for various different reasons, for a brush, for something we take for granted. Mr. Jazefsky needed a brush to clean himself after he goes to the bathroom. It was in his papers to Mr. Sheehan. Mr. Sheehan gave him a wire brush to clean himself with and accept, and that was a reasonable accommodation. So Mr. Jazefsky grieved it and then immediately filed the appeal. A day later he filed the appeal and filed the code. They had the appeal did not raise the denial of the motorized wheelchair, correct? The appeal encompassed everything. It was a general appeal of everything, because Mr. Sheehan was not going to do it. Sotomayor And then the delay may have constituted constructive denial, as you argue, but in that case he would only have exhausted the issues that were raised on that appeal. Even assuming that, okay, the appeal is still in. And it took them five and a half months to send that to Cork. Five and a half months. Here it says one working, in the code it says one working day, seven days. It should have been submitted to Cork. Five and a half months. How could we just ignore that?  The purpose of this code is to prevent the long delay and ensure that somebody that has significant disabilities and needs that Mr. Jazefsky had for basic sanitation are met without the need of being here, without the need of being in the district court. But they completely, completely obfuscated all of their obligations. Think about it. Five and a half months to get it to Cork. And then once Cork got it, how long did they take? The requirement says shall, must, 30 days. It was over a year until Cork made a decision. And why did Cork make a decision? Because we filed the lawsuit. And it took them two months after the lawsuit was filed. That's completely going awry of why this is even in place. The district court missed this and completely gave the same. The problem here is let's say the district court said, okay, he should have, which the regulation has. The word should. Sotomayor, look, most of the accommodations that he sought were granted. They were inadequate. Correct. And that's why the ---- Has he alleged what is inadequate or what is obviously inadequate about the pressure cushion or the shower bars? What was the ---- I mean, what did he seek specifically to have the shower bars here as opposed to there? Exactly. So the problem was the shower bars that they gave that were there were just standard shower bars. Yes. But as you can see, Mr. Jacefsky can't use a standard shower bar. He has ---- They agreed that he can't use the standard shower bar, correct? Right. So they put in a different shower bar. When? Months after. Months after. And the entire time he's sitting there in his own feces. And nobody would take any measures to correct what was necessary to clean himself. They gave him a steel toilet brush, a steel toilet brush to clean himself with. I mean, that's cruel and ---- that's cruel punishment. That's cruel and unusual and should not be accepted. Yes, he is in prison. So what? So what? Specifically, let's take a look at ---- just look at the time frame that the district court said ---- district court saying if Mr. Jacefsky ---- it would have been different because Mr. Jacefsky had the opportunity to say where is my appeal in 45 days. What would have been done? We have 20-20 hindsight in this situation because we know that court didn't make a decision for six months subsequent to receiving the appeal. November 12th was the first day that Mr. Jacefsky appealed the decision. Okay? He should have said where is my appeal? Did you get my appeal? Then what? What was he supposed to do after that? Exactly. There's nothing. It's opaque. There's no ---- The only named defendant, named individual defendant, is Sheehan. What was Sheehan's personal involvement in this? Okay. He was the top person at the prison. And he personally spoke to Mr. Jacefsky on several occasions. He testified during his depositions it was his responsibility to ensure the safety of the inmates. He personally saw that Mr. Jacefsky was not getting the required accommodations. He was the one that personally denied the accommodations and ignored ---- He's the one who personally denied. If you see, the initial denial was from Mr. Sheehan. Okay? He was the one that ignored the requests that were made in the initial grievances. What was Mark supposed to do? It said he should ask where his appeal was. And then what? To what? To what end? There's nothing else in the code after that. The only thing? File a lawsuit because nothing was being done. Because the code was put in place so that lawsuits wouldn't have to be filed. So if the code wasn't going to be filed by the facility, what option did he have? Nothing. Well, doesn't the, don't the regs contemplate that Cork may not accomplish or complete the appeal within the allotted number of days? That's why someone, if you don't get a response from Cork, you should contact the IGP supervisor. To what end? There's nothing else in the code that says what other requirements are there. The only requirements are 30 days. And then all the testimony is basically, I don't know. What else, what else is there to do? What, there's no system in place to help somebody that's suffering, that's someone that's being cruelly punished. You've reserved a couple minutes for rebuttal. Thank you very much, Your Honor. Mr. Blanton. Good morning, Your Honors. May it please the Court. Kate Neville for the appellants. Your Honors, Plaintiff didn't file a grievance about everything in his complaint. He didn't appeal everything that he raised in the grievance that he did file. And then he didn't wait for Cork to decide the grievance. The district court properly found that based on all of those things, he didn't fully exhaust his administrative remedies. Beyond that, the district court also held, as an alternative ground for judgment for defendants, that Plaintiff's ADA claims and Eighth Amendment claims failed on the merits. All of those are reasons to affirm the judgment of the court below. Yes, Your Honor. I mean, what did you say to his argument that he waited and waited and waited and it wasn't being decided? Your Honor, I say that, as the Court has pointed out, first of all, the only things that he actually appealed to Cork were the statement that the provided reacher tool, shower brushes and shower bars were inadequate and cushion, excuse me, were inadequate without further detail. So even if there is a question of fact about the availability of the Cork decision, that still only leaves in play in the case those very narrow factual questions. Beyond that, as the Court has pointed out, this Court had whether the provided cushion, shower brushes, and, Your Honors, I have to say I'm not aware that this allegation that there was a steel wire brush provided to Plaintiff. I'm not aware that that's in the record. I didn't see it just now in Plaintiff's statement of material facts and I don't recall seeing that in the record. If Plaintiff is willing to provide a record site, of course, I would be happy to be proven wrong. So air cushion, the shower brushes, the shower bars, and a grabber tool, the appeal statement said those are inadequate. That's all that was presented to Cork. With regard to the question of the shower bar, did he say, did he give parameters for what was needed for the shower bar, that is to say what he would need in order to be able to achieve hygiene with his disabilities? There was, what was stated in the letter that was attached to the grievance was a soft, a long-handled soft. With regard to the shower bars, I believe Your Honor pointed out later, I believe it was November of 2013, Plaintiff made a reasonable accommodation request saying I need them to be this position instead of this position, and that was done. But again, with regard to the Cork, as the Court has pointed out, yes, Your Honor. Was his initial request for an accommodation with respect to the shower bars, did that specify the height and location of the shower bar that he would be necessary for him to be able to take a shower? I don't recall, but I believe not, Your Honor. But when a problem was revealed, it was addressed. He said this one is not working for me, please change it, and it was changed. How long? I believe those were all done within November of 2013, Your Honor. Yes, but how long was that after he asked for it? No. I mean, I believe the reasonable accommodation request and the response were both in November of 2013, Your Honor. I don't have the specific dates in front of me, but I believe it was all within the same month. And the Court asked me. The request for the shower bar and the installation of the shower bar was within a month. Is that the shower bar? No, Your Honor. I'm sorry. I apologize. I'm having trouble here. I apologize. When Plaintiff put in a request for vertical shower bars because those were what he needed, he said the ones you put in aren't what I need, and that was in November of 2013. And I believe that those were also changed from horizontal to vertical in November of 2013, Your Honor. That is in, that's listed in these, the reasonable accommodation requests are listed in the. What I can't understand. Yes, Your Honor. A shower brush is a known thing. It's not a wire brush. If it's a wire brush, you would agree that it doesn't begin to amount to an accommodation. Yes, Your Honor. Again, I don't know where that, I do not know where that is. I will find out in a moment. Yes. Yes, Your Honor. It's not in the record. It's not in the record. Yes, Your Honor. Certainly. Your Honors, the other, I would like to point out, there's no question. Yes, Your Honor. Maybe your adversary counsel could tell us. Is it in the record, the wire brush, and where? Yes, but I'm not sure where I'll take a look. You have rebuttal, so we'll hear you then. Okay? Yes, Your Honor. Go ahead. Yes, Your Honors. With regard to the merits of the case, I would like to point out that, as the Court noted, the only individual defendant for the Eighth Amendment claims is the superintendent. Plaintiff relies heavily on a conversation he states he had with the superintendent while he was in the special housing unit. Well, he's also relying on the fact that the superintendent is the person who denied the accommodation request. Your Honor, I don't believe the record supports that. The record is clear that the reasonable accommodation requests are made in the first instance to a deputy superintendent, and then two different deputy superintendents, depending on what's requested, handle that. I don't believe that the record supports that, Your Honor. But with regard to the question of the Eighth Amendment claim, the standard is whether he had a subjectively reckless state of mind, because this is a deliberate indifference claim. And because the system is set up so that ADA requests and medical care requests are dealt with by deputy superintendents and medical staff, and that's a very ordinary thing that this Court has recognized, that the superintendent has to rely on subject matter experts for Again, plaintiff mentions a conversation while he was in the special housing unit. His deposition testimony is he had one conversation with a superintendent. The superintendent said, I'm working on it. And then the plaintiff was moved out of the special housing unit into the infirmary so that his medical needs could be met while he was serving his disciplinary penalty. Again, this doesn't rise to the level of the sufficient subjective recklessness that's required for 1983. And again, there's no question that the wheelchair, that the pain medication, that the participation in programs, those weren't appealed to Cork. And they are therefore not available for plaintiff. What's the difference between a grabber and a shower bar? I believe that the grabber tool, Your Honor, was in order to reach items that were out of plaintiff's reach. It's the thing that one holds. Yes, to pick things, pick other things up. It's like a grocery thing. We pick a can down. Yes, Your Honor. Is there a limit in your view to how long Cork can hold on to an appeal without deciding? Your Honor, I think there must be, but I don't think this case is a good case to decide that. What's the limit? I don't. I couldn't say, Your Honor, because And where does it come from? Oh, I'm sorry. I'm sorry. I think What's the limitation? I beg your pardon, Your Honor. I think I was answering a different question than you were asking. The regulations which say 30 days, which the State courts have found is directory not mandatory, there is a separate question under this, under the Supreme Court and this Court's precedent of whether at some point it becomes unavailable. And I don't, that was the question I was saying. I don't think this case is a good case to decide the outer limit of that. I'm asking about the next case. Yes. And I think that there is not, at most the Court should send it back for a hearing. To develop the facts on this. That this is not a good case for the Court to make a broad proclamation. Five and a half or six months. Is that right? From the time the Court received it, it was six months. Yes. And should the limits, should our view of what the limitation is be indexed to the type of claim that's being alleged? So for example, if an inmate is severely disabled and really can't function without a particular, whatever it is, bar, then should we consider that as a factor in assessing the, whether the length of Cork's lack of a response is some form of violation of the regs themselves? I'm not sure, Your Honor, but I will point out that there is an exemption to, that there would be, I think, grounds under the PLRA for, you know, a person who was saying that they were physically endangered. So I think that some of those concerns about, regarding exhaustion would be addressed in that manner. But again, these are questions that the Court, if necessary, could decide, the district court could address in the first instance in a hearing, not on the merits, just with regard to exhaustion. But the Court needn't go that far because there are alternate grounds for affirming the judgment below. Merits-based grounds. Yes, precisely, Your Honor. The district court did hold that plaintiff didn't have claims on the merits, or if there's, the Court thinks there's ambiguity about that, we stated in our brief and plaintiff didn't really argue against that, that dismissal was proper on the merits and those are alternate grounds. Do I understand correctly that your argument of, your argument of failure to exhaust relates at least in part to appeals that had been, or claims that had been pending for six months undecided? Your Honor, I would say that the Court doesn't need, yes, well, let me, in this case, plaintiff had, excuse me, excuse me, Your Honor, that there just isn't enough, I don't think the Court needs to decide that. But if it needs to, if it feels concerned about that, then the most it would, should do is send it back for a hearing on exhaustion, Your Honor. Because as the Court has, yes. The question is, is it correct that with respect to claims that you say should be dismissed because he hadn't exhausted administrative remedies, there were appeals or other claims that had been pending six months undecided? From the time that Cork received plaintiff's appeal on the very limited, very limited appeal, it took them six months to decide it, yes. And this Court's precedent in Neal said you're supposed to, that final, you're supposed to exhaust all your remedies and that's the final remedy. Whether there's now a question after Ross about availability is something that at the most the district court should hold a hearing on in the first instance. Kennedy. Don't we have a precedent in Williams to the effect that the exhaustion requirement is deemed waived or no longer applicable if the, if his, if the person's effort to exhaust has been pending and undecided for an excessively long time? Respectfully, Your Honor, Williams said that this, the problem in Williams was that the regulations were so opaque as to be incomprehensible to any reasonable inmate, and that is not a situation that's presented here. Plaintiff, as the Court has noticed. The problem was that the effort to exhaust had gone undecided for a long time. Your Honor, the, I'm sorry. I didn't, I don't think I quite followed what you were saying. Could you repeat the question? When a prisoner is taxed with failure to exhaust, and the court is told, you have to throw this case out because the petitioner failed to exhaust his administrative remedies, and the facts are that he made an effort to exhaust by filing a complaint, filing a grievance, filing an appeal, whatever it is, and that thing pended undecided for months and months and months and months, isn't it, isn't it appropriate to say that at a certain point, his failure to exhaust is not his fault, it's the fault of the State, which has simply failed to act on his grievance and his appeal, and he is then excused from failure to exhaust? Yes, Your Honor. I said that there certainly could be circumstances in which Cork's delay would render it unavailable. Why isn't 6 months of an appeal of this sort pending or a petition of this sort pending, grievance pending, why isn't this such a circumstance? Your Honor, I don't, because there's not been sufficient facts developed as to the effect and the delay. But your answer really is, if you'll repeat it, that we should remand it and have the district court determine that. If the Court feels it necessary, but again, Your Honors, the Court doesn't need to reach that question because there are alternate grounds for affirmance on the merits, which have been thoroughly briefed and developed below and were briefed by us on the appeal. Unless the Court has further questions, I see my time has expired. Thank you, Your Honors. You have rebuttal. All I want to do on the rebuttal is just direct on the record to page appellant 132, that is the medical, the denial that was personally signed by Mr. Sheehan. Thank you very much. Before you sit down, on Williams, could you explain to me, he has actually, he actually used the administrative regime, the complaint regime, fairly effectively. Would you agree? My client? Yes. He did everything he could, yes. Okay, so how is that a Williams violation? I mean, I was on the panel with Williams, and that involved the opacity of the when to file a complaint, what to do if he did file a complaint. Your client has very adroitly been able to use the complaint procedure. Not only did my client use it appropriately, he had an attorney as well helping him during this process. This process, what happened is, what I was asking you earlier is, what is he supposed to do? But what exactly was he supposed to do to make Cork do something? What in the regulations could he have availed himself of? There is nothing else he could have done. Where in the record is the reference to the steal? I was not able to find that in the record. It's more or less an example of what was actually the reality of what he was living through. Well, we don't deal with reality. No, no, I understand that. Well, we do deal with reality. But the reality of the situation is that there was nothing, going back to your point, there is nothing in the regulations that else he could have availed himself of. Look what it says. It says he should just ask if they received it. Let's just, for argument's sake, say he did that. And let's say immediately after he sent that whatever statement or whatever, I don't even know what the reg is asking him to do. It says he should inquire if Cork received his appeal. It doesn't tell him what else to do after that. There is nothing in the regs. I search and search. There is nothing else in the regs. Well, I mean, the efficacy of asking that could cure the problem. If something was not received and it got lost somewhere, it can put the thing back on track. I agree. Let's say he did. Let's just say, because we do have 2020 hindsight capabilities here. Let's say he did that. November 12th, he files it. Okay? Then 45 days from that is December 27th. Okay. So on December 27th, he then sends a smoke screen or whatever it is to whoever it is and says, hey, guys, did you receive my appeal? Okay. Let's say they did receive his. Let's say they took immediate action and the appeal, the facility says, oh, we made a mistake. I'm sorry. We forgot to send it. So instead of waiting five and a half months, 45 days later they send it to Cork. Now, how long did Cork take from December 27th? If we put that date now to December 27th, when did Cork come up with a decision? Six months. That would be a different case. But Ross says that the inmate should err on the side of exhaustion. If we repeat that, then that would incentivize inmates to at least take up the should language in the applicable regulation and make an inquiry. Should is not a requirement. Oh, I understand that. The requirements are on the other sections. Now, it is a should. But what else could he have done? He did he was talking to his doctors consistently. He was talking to Sheehan consistently. He was talking to everybody in the prison that would listen to him. What else did he have to do there? Anybody that would listen to him. Thank you. Thank you very much. Thank you both.